1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DIANA MAE HOWELL,                    Case No. 2:24-cv-02091-CSK

12                    Plaintiff,          ORDER ON PARTIES' CROSS MOTIONS
                                          FOR SUMMARY JUDGMENT
13         v.
                                          (ECF Nos. 13, 17)
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17         Plaintiff Diana Mae Howell seeks judicial review of a final decision by Defendant

18   Commissioner of Social Security denying an application for disability insurance benefits

19   and supplemental security income.[1] In the summary judgment motion, Plaintiff contends

20   the final decision of the Commissioner contains legal error and is not supported by

21   substantial evidence. Plaintiff seeks a remand for an award of benefits, or alternatively,

22   for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-

23   motion for summary judgment, and seeks affirmance.

24         For the reasons below, Plaintiff's motion is GRANTED, the Commissioner's cross-

25   motion is DENIED, and the final decision of the Commissioner is REMANDED for further

26   proceedings.

27   _____

28   [1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and
     proceeds on the consent of all parties. (ECF Nos. 5, 8, 10.)

                                          1

1    **I.      SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS**

2          The Social Security Act provides benefits for qualifying individuals unable to

3    "engage in any substantial gainful activity by reason of any medically determinable

4    physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the

5    "claimant") seeks Social Security disability benefits, the process for administratively

6    reviewing the request can consist of several stages, including: (1) an initial determination

7    by the Social Security Administration; (2) reconsideration; (3) a hearing before an

8    Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the

9    Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

10          At the hearing stage, the ALJ is to hear testimony from the claimant and other

11   witnesses, accept into evidence relevant documents, and issue a written decision based

12   on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In

13   evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

14   **Step One**: Is the claimant engaged in substantial gainful activity? If yes,
     the claimant is not disabled. If no, proceed to step two.

15   **Step Two**: Does the claimant have a "severe" impairment? If no, the
16   claimant is not disabled. If yes, proceed to step three.

     **Step Three**: Does the claimant's combination of impairments meet or
17   equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")?
     If yes, the claimant is disabled. If no, proceed to step four.
18
     **Step Four**: Is the claimant capable of performing past relevant work? If
19   yes, the claimant is not disabled. If no, proceed to step five.

20   **Step Five**: Does the claimant have the residual functional capacity to
     perform any other work? If yes, the claimant is not disabled. If no, the
21   claimant is disabled.

22   *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4),

23   416.920(a)(4). The burden of proof rests with the claimant through step four, and with

24   the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the

25   ALJ finds a claimant not disabled, and the Social Security Appeals Council declines

26   review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v.*

27   *Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of

28   review is a non-final agency action). At that point, the claimant may seek judicial review

1  of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

2       The district court may enter a judgment affirming, modifying, or reversing the final

3  decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial

4  review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has

5  repeatedly admonished that the court cannot manufacture arguments for the plaintiff.

6  *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep.*

7  *Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court

8  should "review only issues which are argued specifically and distinctly," and noting a

9  party who fails to raise and explain a claim of error waives it).

10      A district court may reverse the Commissioner's denial of benefits only if the ALJ's

11  decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d.

12  at 1154. Substantial evidence is "more than a mere scintilla" but "less than a

13  preponderance," i.e., "such relevant evidence as a reasonable mind might accept as

14  adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in

15  the record that both supports and detracts from the ALJ's conclusion, but may not affirm

16  on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th

17  Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in

18  testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision

19  must be upheld where the evidence is susceptible to more than one rational

20  interpretation, or where any error is harmless. *Id.*

21  **II.    FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**

22      On December 4, 2015, Plaintiff applied for disability insurance benefits and

23  supplemental security income under Titles II and XVI of the Social Security Act, alleging

24  she has been disabled since January 29, 2015. Administrative Transcript ("AT") 96-96,

25  223-33 (available at ECF No. 6). Plaintiff claimed disability due to plantar fasciitis, carpal

26  tunnel, radiculitis, cervical spine, lower back, left knee dislocated. *See* AT 95-96.

27  Plaintiff's applications were denied initially and upon reconsideration; she sought review

28  before an ALJ. AT 95-110, 111-42. Plaintiff appeared with a representative at a February

22, 2019 hearing, where Plaintiff testified about her impairments and a vocational expert testified about hypothetical available jobs in the national economy. AT 43-80. On March 28, 2019, the ALJ issued a decision finding Plaintiff was not disabled. AT 28-37. Upon stipulation of the parties, the District Court in the Eastern District of California remanded the case for a de novo hearing and a new decision. AT 2763-64. A second hearing was held on September 6, 2023, where Plaintiff's representative appeared, but Plaintiff did not. AT 2717-33. A vocational expert testified about hypothetical available jobs in the national economy. *See id.*

On April 3, 2024, the ALJ issued a decision finding Plaintiff was not disabled. AT 2694-2709. At step one, the ALJ found Plaintiff had engaged in substantial gainful activity during the following periods:  June 2021 forward; however, there had been a continuous 12-month period during which the Plaintiff did not engage in any substantial gainful activity. AT 2697. At step two, the ALJ determined Plaintiff had the following severe impairments:  degenerative disc disease of the cervical spine, with radiculopathy; degenerative disc disease of the lumbar spine; carpal tunnel syndrome; osteoarthritis of the hands, hips, and shoulders; labral tear and trochanteric bursitis of the hips; patellofemoral stress syndrome; and obesity. *Id.* At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing. AT 2700 (citing 20 C.F.R Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.18 (abnormality of a major joint(s) in any extremity), and 11.14 (peripheral neuropathy) for Plaintiff's physical impairments. The ALJ also considered Plaintiff's adjustment disorder with depressed mood and pain disorder, examining the "Paragraph B" criteria for the mental impairments.[2] AT 2698. The ALJ found Plaintiff had a mild limitation in

---

[2]  "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental

1    concentrating, persisting, and maintaining pace; and no limitations in understanding,

2    remembering, and applying information, in interacting with others, and in adapting or

3    managing oneself. AT 2699.

4          The ALJ then found Plaintiff had the residual functional capacity to perform light

5    work (20 C.F.R. §§ 404.1567(b) and 416.967(b)), except that Plaintiff:

> [S]hould not climb ladders, ropes, or scaffolds. She can
> occasionally climb ramps and stairs. She should not be
> required to balance, as defined in the Selected
> Characteristics of Occupations (SCO) and Dictionary of
> Occupational Titles (DOT). She can occasionally stoop,
> kneel, crouch, and crawl. She can occasionally reach
> overhead bilaterally. She should not work at unprotected
> heights. She can frequently handle and finger bilaterally.

11   AT 2701.

12         Based on the residual functional capacity, the ALJ determined at step four that

13   Plaintiff was capable of performing past relevant work as a food demonstrator and a

14   pharmacy clerk. AT 2708. The ALJ determined this work does not require the

15   performance of work-related activities precluded by Plaintiff's residual functional

16   capacity. *Id.* At step five, the ALJ found Plaintiff capable of performing her past relevant

17   work, including:  (i) food demonstrator, light, semi-skilled, SVP 3; and (ii) pharmacy clerk,

18   light, semi-skilled, SVP 3.[3] AT 2708. Thus, the ALJ found Plaintiff not disabled during the

19   relevant period. AT 2709.

20         On February 25, 2020, the Appeals Council rejected Plaintiff's appeal. AT 9-12.

21   Plaintiff filed this action requesting judicial review of the Commissioner's final decision,

22   and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 13, 17, 18.)

23   / / /

24   _____

25   Disorders, sub. A.2.b.
     [3]  "Light" in the ALJ's step-five determination references light work, as defined by
26   20 C.F.R. §§ 404.1567(b) and 416.967(b).
          "SVP" is "specific vocational preparation," defined as "the amount of lapsed time
27   required by a typical worker to learn the techniques, acquire the information, and
     develop the facility needed for average performance in a specific job-worker situation."
28   *See* DOT, App. C, § II, available at 1991 WL 688702.

1    III.    **ISSUES PRESENTED FOR REVIEW**

2    Plaintiff contends the ALJ erred by:  (A) failing to provide legally adequate

3    reasons for rejecting the medical opinions of Hunter Greene, M.D.; Monte Penner, M.D.;

4    Elaine Date, M.D.; Hong-Wen Xue, M.D.; and Plaintiff's other treating sources;

5    (B) relying on Dr. Amon's opinion; (C) relying on the ALJ's lay interpretation of the

6    medical evidence; and (D) failing to provide clear and convincing reasons to discount the

7    more severe aspects of Plaintiff's symptom testimony. Plaintiff seeks a remand for an

8    award of benefits, or alternatively, for further proceedings. (ECF Nos. 13, 18.)

9    The Commissioner argues the ALJ:  (A) appropriately analyzed the medical

10    opinion evidence; and (B) properly evaluated Plaintiff's subjective symptom allegations.

11    (ECF No. 17.) Thus, the Commissioner contends the decision as a whole is supported

12    by substantial evidence and should be affirmed. *Id*.

13    IV.    **DISCUSSION**

14    A.    **Medical Opinion Evidence**

15    Plaintiff first argues that the ALJ erred in the analysis of the following medical

16    opinions:  Dr. Greene, Dr. Penner, Blake Collier, M.D., Dr. Date, Dr. Xue, Sarah Money,

17    M.D., Peter Eric Nedresky, P.A., and S. Amon, M.D.

18    1.    Legal Standards

19    For cases filed before March 27, 2017, the ALJ is required to consider a number

20    of factors in deciding the weight given to any medical opinion. These include the

21    examining relationship, the length of the treatment relationship and frequency of

22    examination, the amount of support detailed in the opinion, the consistency of the

23    opinion with the record, specialization of the medical professional, and any other factors

24    deemed relevant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Additionally, in the

25    Ninth Circuit,  the weight afforded a medical opinion depends on whether it was

26    proffered by a treating, examining, or non-examining professional. *Holohan v.*

27    *Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *Lester*, 81 F.3d at 830. This also

28    depends on whether the opinion was offered from an acceptable or non-acceptable

6

1    medical source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

2         For acceptable medical sources in pre-March 27, 2017 cases, a treating

3    physician's opinion carries more weight than an examining physician's opinion, and an

4    examining physician's opinion carries more weight than a non-examining physician's

5    opinion. *Holohan*, 246 F.3d at 1202. However, if a treating professional's opinion is

6    contradicted by an examining professional's opinion with support in the record, the ALJ

7    is to resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

8    *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The opinion of a non-

9    examining professional, by itself, is insufficient to reject the opinion of a treating or

10   examining professional. *Lester*, 81 F.3d at 831; *but see Tonapetyan v. Halter*, 242 F.3d

11   1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical

12   expert does not alone constitute a specific, legitimate reason for rejecting a treating or

13   examining physician's opinion, it may constitute substantial evidence when it is

14   consistent with other independent evidence in the record.").

15        In order to evaluate whether an ALJ properly rejected a contradicted opinion from

16   an acceptable medical source, the court considers whether other contradictory opinions

17   are in the record and whether clinical findings support the opinions. *Lester*, 81 F.3d at

18   831. Under the pre-March 27, 2017 framework, an ALJ must provide "specific and

19   legitimate" reasons to reject the contradicted opinion of a treating or examining doctor.

20   *Id.* at 830-31. An ALJ provides specific and legitimate reasons by "setting out a detailed

21   and thorough summary of the facts and conflicting clinical evidence, stating [an]

22   interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. However, the

23   ALJ is not required to give a medical opinion any weight if it is conclusory or supported

24   by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).

25        In contrast to acceptable medical sources, the evaluative framework differs for

26   opinions from "medical sources who are not acceptable medical sources," such as nurse

27   practitioners, physician's assistants, chiropractors, audiologists, therapists, and licensed

28   clinical social workers. 20 C.F.R. §§ 404.1527(f), 416.927(f); *see also Molina*, 674 F.3d

at 1111. Even though these sources are afforded less weight in Social Security cases filed before March 27, 2017, the ALJ is still required to consider the same factors as with acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); *see also* Soc. Sec. Ruling (SSR) 06-03p, available at 2006 WL 2329939, at *3 (noting these professionals "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," and so their opinions are still relevant in determining a claimant's severe impairments and ability to work). However, an ALJ need only articulate reasons "germane to the witness" when rejecting these sources' opinions. *Molina*, 674 F.3d at 1111, *see also Delegans v. Berryhill*, 766 F. App'x 477, 480 (9th Cir. 2019) (in a case filed prior to March 27, 2017, finding no error in the ALJ's rejection of testimony from a licensed clinical social worker because the ALJ provided germane reasons for discounting the opinion).

Finally, the ALJ is not required to give any special significance to a medical source's statement that a claimant is "disabled" or "unable to work," as this is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see also Boardman v. Astrue*, 286 F. App'x 397, 399 (9th Cir. 2008) (physician's opinion that a claimant is "disabled" is "irrelevant at best" and "not entitled to special significance").

> ### 2.    Plaintiff's Physical Limitations
>
> #### a.    *Dr. Hong-Wen Xue*

Plaintiff argues that the ALJ erred by not discussing opinions by Dr. Xue, who was a treating source. Pl. MSJ at 32-33. Dr. Xue was Plaintiff's primary care physician, and both parties agree that Dr. Xue was a treating source. *See* Pl. MSJ at 32-33; Def. MSJ at 23-24. Plaintiff states that Dr. Xue opined that Plaintiff could work only six hours a day and was unable to work two days in a row because of her cervical radiculopathy, left knee joint pain, and right shoulder joint pain. *Id.* at 32 (citing 2660). For this opinion, Plaintiff cites to the examination report of Dr. Date, who discussed Dr. Xue's statements, stating "Diagnosis: Cervical radiculopathy, left knee joint pain, and right shoulder joint pain. Modified work through 2.29.16. Six hours a day. Cannot work two days in a row."

AT 2660. Dr. Xue's treatment notes state that Plaintiff "wants a note for her job to state that she can not work 8 hours per shift and 2 days in the row at work because of all these [*sic*] pain." AT 773. Dr. Xue states that a note was provided per Plaintiff's request. AT 775. Dr. Xue also noted that Plaintiff presented for cervical radiculopathy, left knee joint pain, and right shoulder pain, was negative for gait disturbance, joint swelling, muscle pain or muscular weakness. AT 773, 774. Dr. Xue noted that Plaintiff had tenderness at "right neck," shoulder, knee, and feet, with range of motion that was slightly painful. AT 774.

Defendant argues that the fact the ALJ did not discuss this opinion should not be deemed prejudicial error because it is questionable whether the limitations can be attributed to Dr. Xue, because they are based on Plaintiff's subjective complaints. Def. MSJ at 32. Defendant also argues that the Court may draw inferences from all the reasons the ALJ provided for discounting the contemporaneous opinions submitted by other medical professionals. *Id.*

An ALJ commits legal error when she disregards treating source opinions and makes contrary findings, effectively rejecting the opinions. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996). An ALJ is required to evaluate and weigh every medical opinion in the record. 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c). Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a), 416.927(a)(1).

Here, Defendant does not argue that the opinion by Dr. Xue at issue is not a medical opinion (*see* Def. MSJ) and both parties agree that Dr. Xue was a treating source (Pl. MSJ at 32-33; Def. MSJ at 23-24). Accordingly, the ALJ was required to address this treating source opinion. Because an ALJ must give specific and legitimate reasons supported by substantial evidence for rejecting a treating source's opinions, an ALJ may not ignore a treating source's opinion. *See Marsh v. Colvin*, 792 F.3d 1170,

1172-73 (9th Cir. 2015); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The

Court finds that the ALJ committed error by not addressing Dr. Xue's opinion. Further,

the Court finds that the ALJ's failure to address this treating source opinion is not

harmless. *See Marsh*, 792 F.3d at 1173 (holding the ALJ's failure to mention a treating

source's opinion was not harmless error).

*b.*    *Dr. Hunter Greene and Dr. Sarah Money*

Plaintiff argues that the ALJ erred in evaluating the medical opinions of treating

source Dr. Hunter Greene. Pl. MSJ at 27, 33 (ECF No. 13). The ALJ considered multiple

opinions by Dr. Greene. First, the ALJ considered the opinions of Dr. Greene and Dr.

Money from April and June 2016. AT 2706. Dr. Greene and Dr. Money were doctors at

Summit Orthopedic Specialists. *See* AT 1215-16. In this opinion, the doctors reported

that Plaintiff needed to sit on a stool or chair as needed at work. AT 2706; *see* AT 1215-

16.

The ALJ gave this opinion little weight, finding the opinion to be somewhat

supported by "short-lived" reports of knee symptoms, but not consistent with Plaintiff's

regular treatment and with normal gait and minimal findings related to imaging and

strength. AT 2706; *see* AT 690, 692-93, 697, 700, 704, 705, 999, 1037, 1659, 2689.

Here, the ALJ properly discounted this opinion because it is inconsistent with the overall

record. *See Tommasetti*, 533 F.3d at 1041; *Morgan v. Comm'r of the Soc. Sec. Admin.*,

169 F.3d 595, 602-03 (9th Cir. 1999).

Next, the ALJ discussed the May 2019 opinion of Dr. Greene. AT 2706-07. In this

opinion, Dr. Greene noted that Plaintiff could only sit for half an hour during an eight hour

day, stand/walk for half an hour during an eight hour day, and must lie down or elevate

her legs every couple of hours. AT 3016. Plaintiff could not squat, kneel, push or pull,

and could reach/grasp, handle, feel, and use fine finger manipulation for six hours out of

an eight hour day. AT 3016-17. She could push/pull for four hours out of an eight hour

day, and could only perform these activities for one hour at a time without resting. AT

3017.

10

1    The ALJ gave this opinion little weight. AT 2707. The ALJ found the opinion was

2    not well supported, because it relied on an MRI to support significant limitations,

3    however the MRI findings were minimal. AT 2706; *see* AT 2610. Further, the ALJ noted

4    that imaging of Plaintiff's lumbar, hip, and hand were also minimal, and that Plaintiff's

5    symptom complaints were inconsistent and sporadic. AT 2707; *see* AT 903, 986, 1474,

6    2007. The ALJ also found the opinion inconsistent with Plaintiff's physical examination

7    findings, noting generally normal gait and good or better strength and normal reflexes

8    and sensations. AT 718, 778, 782, 903, 986, 1254, 1307, 1474, 1659, 2007. The ALJ

9    properly considered this opinion and awarded it little weight. *See Tommasetti*, 533 F.3d

10   at 1041; *Morgan*, 169 F.3d at 602-03.

11           Plaintiff argues that the ALJ cherry-picked the evidence when rejecting Dr.

12   Greene's opinions. *See* Pl. MSJ at 28-30. An ALJ may not "cherry-pick" evidence in

13   discounting a medical opinion. *Castaneda v. Kijakazi*, 2023 WL 6215792, at *5 (E.D. Cal.

14   Sept. 25, 2023); *see Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("Yet we

15   'must consider the entire record as a whole, weighing both the evidence that supports

16   and the evidence that detracts from the Commissioner's conclusion, and may not affirm

17   simply by isolating a specific quantum of supporting evidence.'" (quoting *Garrison*, 759

18   F.3d at 1009)). Here, the ALJ cited a range of evidence when analyzing Dr. Greene's

19   opinions, and fully discussed the objective medical evidence earlier in the opinion. AT

20   2706-06; *see* AT 2702-05. Accordingly, the ALJ did not improperly cherry-pick the

21   evidence.

22                   *c.    Dr. Monte Penner and P.A. Blake Collier*

23           Plaintiff also argues that the ALJ improperly rejected the opinions of Dr. Penner

24   and P.A. Collier, who evaluated and treated Plaintiff's left knee injury from January to

25   April 2015. Pl. MSJ at 30-31. The ALJ discussed the May 2015 opinion of Dr. Penner

26   and P.A. Collier, noting that they reported modified work restrictions. AT 2705. The

27   medical professionals noted that Plaintiff had work restrictions, including no climbing and

28   she should work in a sit down job. AT 692. Plaintiff was limited to standing or walking to

1    two hours per day, with no stooping or bending, and no kneeling or squatting. *Id.* Plaintiff

2    was limited to lifting pushing, and pulling no more than ten pounds, and could only work

3    up to four hours a shift. *Id.*

4          The ALJ gave this opinion little weight, finding the assessments somewhat

5    supported by Plaintiff's knee treatment, but not consistent with reports of resolution

6    within months of treatment, with the strength, sensory, and gait findings throughout the

7    record, or the minimal imaging findings. AT 2705. The ALJ thoroughly reviewed the

8    medical opinion evidence (AT 2702-05), and properly found this opinion inconsistent with

9    the objective evidence. *See Tommasetti*, 533 F.3d at 1041; *Morgan*, 169 F.3d at 602-03.

10                d.      *Dr. Elaine Date*

11          Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Date. Pl. MSJ

12    at 31-32. Dr. Date is a qualified medical examiner who examined Plaintiff in September

13    2016. AT 2706. Dr. Date found Plaintiff to be 10% impaired; Plaintiff had a new knee

14    injury caused by an event that took place on January 29, 2015; and apportioned 95% of

15    Plaintiff's knee disability to the January 29, 2015 event. AT 2665. Dr. Date noted that

16    Plaintiff had returned to her usual occupation but her work hours were more limited. AT

17    2666.

18          The ALJ gave this opinion little weight. AT 2706. The ALJ found the opinion to be

19    overly vague and not well supported as to specific limitations. *Id.* Further, to the extent

20    the opinion indicates reduced hours, the ALJ found it not supported and not consistent

21    with the minimal imaging and inconsistent physical examination findings. *Id.*; *see* AT

22    793, 903, 986, 1187, 1162, 1266, 1276, 1474, 1659, 2007. For the same reasons

23    discussed above, the ALJ extensively discussed the objective medical evidence in the

24    opinion, and the ALJ properly found this opinion inconsistent with the objective evidence.

25    *See Morgan*, 169 F.3d at 602-03. Further, An ALJ does not need to accept an opinion

26    that is vague and that does not specify limitations in a meaningful fashion. *See Clarinda*

27    *G. v. Kijakazi*, 2022 WL 17227842, at *4 (E.D. Wash. Sept. 27, 2022) (citing *Ford*, 950

28    F.3d at 1156). Dr. Date states that Plaintiff's work hours are more limited, and she can

slowly increase her work hours. AT 2666. However, Dr. Date does not explain what limited hours mean, or by how much Plaintiff should increase these hours. *See Clarinda G.*, 2022 WL 17227842 at *4; *Hunt v. Colvin*, 954 F. Supp. 2d 1181, 1188 (W.D. Wash. 2013). The ALJ did not err by giving this opinion little weight.

e.    <i>P.A. Peter Eric Nedresky</i>

Plaintiff argues that the ALJ erred by giving P.A. Nedresky's opinion little weight that Plaintiff could lift, carry, push, and pull no more than ten pounds. Pl. MSJ at 33. The ALJ noted that P.A. Nedresky found that Plaintiff could frequently stand/walk, could not lift, carry, push, or pull more than ten pounds, and had postural limitations. AT 2553. The ALJ found that to the extent P.A. Nedresky's standing, walking, and postural limitations are not inconsistent with the definition of light work, they are well supported and consistent with the minimal and short-lived physical examination findings, including relating to gait, strength, and range of motion, combined with minimal imaging findings. AT 2706; *see* AT 690, 692-93, 697, 700, 704, 705, 999, 1037, 1659, 2689. The ALJ gave this portion of the opinion great weight. AT 2706. However, the ALJ gave little weight to P.A. Nedresky's lifting, carrying, pushing, and pulling limitations, and the preclusion from climbing. *Id.* The ALJ found that this portion of Nedresky's opinion was not well supported, or consistent with minimal postural indications and only short lived upper and lower extremity complaints and findings, including relating to imaging, range of motion, and strength. *Id.*; *see* AT 774, 776, 782, 1254. The ALJ extensively discussed the objective medical evidence in the opinion, and the ALJ properly found this portion of Nedresky's opinion inconsistent with the objective evidence. *See Tommasetti*, 533 F.3d at 1041; *Morgan*, 169 F.3d at 602-03.

f.    <i>Dr. S. Amon</i>

Plaintiff argues that the ALJ erred by relying on State medical consultant Dr. Amon's opinion. Pl. MSJ at 35-36. The ALJ considered the opinions of State agency medical consultants H. Pham, M.D. and S. Amon, M.D. AT 2705. Dr. Pham reported that Plaintiff could perform medium work with postural limitations. AT 93. Dr. Amon reported

13

1   that Plaintiff could perform light work with postural and manipulative limitations. AT 123.

2   The ALJ found Dr. Pham's opinion inconsistent with the medical evidence and gave the

3   opinion little weight. AT 2705. The ALJ found Dr. Amon's postural restrictions overly

4   permissive given the evidence and the short-lived evidence that Plaintiff had impaired

5   lower extremity range of motion and strength. AT 793, 999, 1037, 1659, 2689. The ALJ

6   also found Dr. Amon's exertional and overhead reaching limitations better and consistent

7   with the strength, range of motion, and imaging findings noted in the ALJ's opinion. AT

8   2705. The ALJ gave Dr. Amon's manipulative and environmental limitations great weight,

9   and his postural limitations little weight. *Id.*

10   As discussed, the ALJ extensively discussed the objective opinion evidence. AT

11   2702-05. It was not error for the ALJ to afford Dr. Amon's opinion great weight when the

12   opinion was consistent with the objective medical evidence and other evidence in the

13   record. *See Thomas*, 278 F.3d at 957.

14   Plaintiff also argues with respect to this opinion, that the ALJ erred by relying on

15   her lay interpretation of the medical evidence, and that the ALJ reviewed significant

16   objective and clinical medical evidence without the assistance of a medical expert. Pl.

17   MSJ at 36. The Court is not persuaded by this argument. As Defendant notes, it is the

18   ALJ's responsibility to evaluate the medical evidence, make findings about that

19   evidence, and resolve conflicts in the evidence. *See* 20 C.F.R. § 404.1520b;

20   *Tommasetti*, 533 F.3d at 1041. The Court does not find any err in how the ALJ evaluated

21   the medical evidence.

22                          g.      *Dr. Jamison Green*

23   Plaintiff states in her brief that the ALJ attributed a 2019 modified work restriction

24   report to the wrong Dr. Green. *See* Pl. MSJ at 33-34. In the record, there are medical

25   opinions issued by a Dr. Hunter Greene (with an "e") (*see* AT 3016-17) and by a Dr.

26   Jamison Green (no "e") (*see* AT 3108-19). The ALJ discusses 2019 modified work

27   restrictions by "Dr. Greene" (with an e). At 2706. However, the opinion cited in this

28   paragraph is the opinion of Dr. Jamison Green (no "e"). *Id.*; *see* AT 3018-19. It appears

1  that the ALJ made a typo when she wrote "Dr. Greene" when discussing the 2019

2  modified work restrictions. Because Plaintiff does not otherwise argue that the ALJ

3  committed error when evaluating this opinion, the Court does not address this opinion.

4  **B.     Subjective Symptom Testimony**

5  Plaintiff argues that the ALJ failed to provide legally adequate reasons for

6  rejecting Plaintiff's testimony.[4] Pl. MSJ at 37.

7  1.    Legal Standards

8  A claimant's statements of subjective symptoms alone are insufficient grounds to

9  establish disability. 20 C.F.R §§ 404.1529(a), 416.929(a). If an ALJ was required to

10  believe every allegation of pain or impairment, disability benefits would run afoul of the

11  Social Security Act and its purpose. *Treichler v. Comm'r,* 775 F.3d 1090, 1106 (9th Cir.

12  2014). In evaluating the extent to which an ALJ must credit the claimant's report of their

13  symptoms, the Ninth Circuit has stated:

14  First, the ALJ must determine whether the claimant has presented
    objective medical evidence of an underlying impairment which could
15  reasonably be expected to produce the pain or other symptoms
    alleged. In this analysis, the claimant is not required to show that her
16  impairment could reasonably be expected to cause the severity of the
    symptom she has alleged; she need only show that it could
17  reasonably have caused some degree of the symptom. Nor must a
    claimant produce objective medical evidence of the pain or fatigue
18  itself, or the severity thereof.

19  If the claimant satisfies the first step of this analysis, and there is no
    evidence of malingering, the ALJ can reject the claimant's testimony
20  about the severity of her symptoms only by offering specific, clear and
    convincing reasons for doing so. This is not an easy requirement to
21  meet: The clear and convincing standard is the most demanding
    required in Social Security cases.
22
23  *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quotations omitted). The ALJ's

24  reasons for discounting or rejecting a claimant's subjective symptom testimony must be

25  sufficiently specific to allow a reviewing court to conclude the adjudicator did not

26  arbitrarily discredit a claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493

27  _____

    [4]  As noted above, Plaintiff did not attend the September 6, 2023 hearing. *See* AT 2717-
28  33. The term "testimony" is used throughout the order to describe Plaintiff's subjective
    symptoms generally, and is not limited to hearing testimony.

1  (9th Cir. 2015) (quotations omitted). Examples of "specific, clear and convincing

2  reasons" for discounting or rejecting a claimant's subjective symptom testimony include:

3  prescription of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir.

4  2007); inconsistencies between the plaintiff's testimony and conduct (including daily

5  activities), *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); whether the alleged

6  symptoms are consistent with the medical evidence of record, *Rollins v. Massanari*, 261

7  F.3d 853, 857 (9th Cir. 2001); an unexplained or inadequately explained failure to follow

8  a prescribed course of treatment, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991);

9  or prior inconsistent statements by the plaintiff, *Fair v. Bowen*, 885 F.2d 597, 604 n. 5

10  (9th Cir. 1989). A lack of corroborating, objective medical evidence alone is insufficient

11  grounds for an ALJ to discount subjective symptoms; however, it is a factor the ALJ may

12  consider. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

13                    2.    Symptom Testimony

14        Regarding Plaintiff's statements that she had disabling physical pain such that

15  she could not work, the ALJ began by summarizing Plaintiff's statements from her

16  disability report. AT 2701. In Plaintiff's 2016 disability report, she stated that she had left

17  knee pain, right hip pain, neck pain, headaches, and numbness in her right arm. AT 331.

18  Plaintiff states that she is unable to sleep all night, she cannot stand or sit for long

19  periods of time, she no longer drives, and is unable to work like she used to. *Id.* Plaintiff

20  has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling,

21  stair-climbing, completing tasks, and using hands. AT 336. Plaintiff has to sit down when

22  she puts her pants on, she will not take a shower because of her hip pain, has to get into

23  a bath slowly, and has difficulty using the toilet when her hip and back are flared. AT

24  332. Plaintiff no longer makes large meals because of her neck and arm numbness, but

25  makes sandwiches and snacks. AT 333. Plaintiff states that she cleans once or twice a

26  month and she does laundry once a week. *Id.* Plaintiff drives a car and does grocery

27  shopping but needs help reaching items that are high up and putting items in the car. AT

28  334. Plaintiff used to enjoy dancing and using a stationary bike but can no longer do

16

these things because of her hip and knee pain. AT 335. She enjoys watching television

and movies. *Id.* Plaintiff uses a cane and brace or splint. AT 337. As noted above,

Plaintiff did not attend the September 6, 2023 hearing. Given the remand for a de novo

hearing, the ALJ properly did not summarize Plaintiff's testimony from her 2019 hearing,

which Plaintiff did attend.

The ALJ found that Plaintiff's statements about the intensity, persistence, and

limiting effects of her symptoms were inconsistent with the medical evidence and other

evidence of the record. AT 2702, 2704. First, the ALJ found Plaintiff's subjective

complaints to be sporadic and inconsistent. AT 2704. The ALJ noted that in 2013 prior to

Plaintiff's alleged onset date, Plaintiff was diagnosed with carpal tunnel syndrome and

prescribed braces. AT 2702. In September 2013, Plaintiff fell and injured her right hand,

and later that year was diagnosed with cervical degenerative disc disease. *Id.* In 2014,

Plaintiff reported wrist pain, tingling, and numbness in her hands and fingers, and was

assessed with carpal tunnel syndrome. AT 848. But medical imaging of her right hand in

July 2014 was normal. AT 903. In 2015, Plaintiff injured her left knee at work, and in

March 2015, she reported moderately severe left knee pain, without numbness, tingling,

or weakness. AT 706. On examination, Plaintiff had an abnormal gait, with left knee

tenderness and range of motion deficits, but examination of her left foot, ankle, lower

leg, thigh, and hip was normal. AT 707. Strength in the left lower extremities was normal.

*Id.* In another exam, Plaintiff stated her left knee pain was getting worse. AT 694. An

MRI of Plaintiff's knee during this period showed a sprain in her medical collateral

ligament (AT 790), and in June 2015 Plaintiff was assessed with left knee degenerative

joint changes (AT 2659). In July 2015, Plaintiff showed impaired but improved left knee

range of motion, and slightly reduced left lower extremity strength. AT 792. In September

2015, Plaintiff reported hip pain, but had a stable gait and full extremity strength and

sensation, with some tenderness in the bilateral buttock area. AT 782.

In October 2015, Plaintiff reported a fall, with right leg, lower back, and neck pain.

AT 778. Plaintiff reported pain in her right buttock area and lower lumbar area, a muscle

1   spasm in her right low back, and no weakness, numbness, or tingling in her legs. AT

2   778. Plaintiff had a normal gait, normal strength, and the straight leg raise was negative.

3   *Id.* Plaintiff noted ongoing right hip and low back pain, but had a stable gait with limited

4   range of motion and tenderness in her lower back and right thigh. AT 776. Her straight

5   leg raise test was negative bilaterally. *Id.* In November 2015, Plaintiff noted left knee

6   pain, right shoulder pain, and cervical radicular pain. AT 773. On examination, Plaintiff

7   had some tenderness at the right side of her neck, shoulder, knee, and feet and range of

8   motion was slightly painful, but she had a normal gait and muscle strength and sensation

9   were within normal limits. AT 773-74. In December 2015, Plaintiff reported pain in her

10  right low back and hip area. AT 949.

11        In January 2016, an MRI of Plaintiff's lumbar spine showed mild diffuse disc bulge

12  and mild bilateral facet arthrosis, with mild bilateral neuroforaminal narrowing. AT 986.

13  During a January 2016 examination, Plaintiff showed impaired range of motion in her

14  cervical spine, with full range of motion in her shoulder. AT 999. In February 2016,

15  Plaintiff showed impaired right hip range of motion which was tender to palpation and

16  slightly reduced strength. AT 1004. In March 2016, an MRI of Plaintiff's cervical spine

17  showed multilevel degenerative cervical spondylosis. AT 1023. During this time, Plaintiff

18  reported improvement with an injection in her left knee. AT 1276. In April 2016, Plaintiff

19  reported some improvement in her pain and range of motion in her left knee. AT 1107,

20  1266. In September 2016, Plaintiff showed normal coordination in both extremities, and

21  had a normal gait and full extremity strength with some tenderness. AT 1253-54. Plaintiff

22  reported longstanding neck pain and right hip pain due to bursitis. AT 662. Upon

23  examination, Plaintiff showed mild swelling in her left knee, she was tender to palpation

24  over the left medial and lateral joint lines, and had pain with medial stress. AT 2664.

25  Plaintiff had impaired range of motion in her left knee and her gait was very slightly

26  antalgic. *Id.*

27        In January 2017, Plaintiff reported neck and left arm pain that moved from her

28  shoulder to her fingers, and she reported pain and numbness. AT 2214. Upon

examination, Plaintiff had full upper and lower extremity strength, with decreased left-hand sensation. AT 2215. In May 2017, Plaintiff injured herself and experienced a patellar dislocation. AT 1245. Plaintiff's physical therapist noted in August 2017 that Plaintiff was making improvements in range of motion and strength, and reduction in pain. AT 1307. In September 2017, an MRI of Plaintiff's hip showed mild osteoarthrosis and a tear at the base of the anterior labrum. AT 1474. In July 2017, an MRI of Plaintiff's shoulder showed mild tendinosis and mild degenerative osteoarthrosis. AT 2610. Plaintiff rated her left knee pain at a ten out of ten on November 22, 2017 and was assessed with patellofemoral stress syndrome. AT 1239, 1243. In February 2018, Plaintiff reported that a knee brace helped with her knee pain. AT 1233. Plaintiff had an MRI which showed mild left L3-4 foraminal stenosis and mild right L4-5 foraminal stenosis. AT 1629. Plaintiff was diagnosed with a right hip anterior labral tear and mild lumbar degenerative disc. AT 1659. In 2018, Plaintiff reported difficulty walking and increased pelvic pain; she reported ten out of ten pain, and tenderness, but had full strength and intact sensation. AT 1789, 1221-24.

In September 2019, Plaintiff underwent a worker's compensation evaluation, and reported left knee pain, right hip pain that had improved with an injection, left groin pain, and numbness on the outer part of her right hip. AT 2684. Plaintiff showed tenderness to palpation of her left knee, and pain with range of motion in her hips. AT 2688. Plaintiff had full or slightly reduced strength in her lower extremities. AT 2689.

Based on the objective medical evidence summarized by the ALJ, the ALJ properly found inconsistencies between Plaintiff's testimony and the medical evidence. The ALJ could consider the objective medical evidence in resolving conflicts in Plaintiff's testimony, and did not err in finding Plaintiff's own stated extreme limitations inconsistent with the mostly normal medical findings in the record. *See Rollins*, 261 F.3d at 857; *see also Marshall v. Saul*, 830 F. App'x 179, 181 (9th Cir. 2020) (finding clear and convincing reasons to reject the plaintiff's symptom testimony where there was a "disjunction between his statements that [he] could not walk and medical evidence showing that his

1  gait was normal").

2       Plaintiff contends the ALJ omitted material evidence that supported Plaintiff's

3  complaints, including the evidence of scheduled surgery on her left shoulder and

4  recommended surgery on her left knee. Pl. MSJ at 38. However, as discussed above,

5  the ALJ provided a thorough summary of the medical evidence, and found it inconsistent

6  with Plaintiff's testimony. The ALJ considered the whole of the record in crafting

7  Plaintiff's physical limitations in the residual functional capacity. *See Ghanim*, 763 F.3d

8  at 116.

9       In addition to relying on the medical evidence, the ALJ found that Plaintiff

10  experienced improvement with treatment. AT 2704-05. The Court finds the ALJ

11  sufficiently cited evidence in the decision to support this conclusion. For example, the

12  ALJ noted that in July 2015, Plaintiff showed improved left knee range of motion, with

13  only slightly reduced left lower extremity strength. AT 793. Further, Plaintiff reported

14  some improvement in March 2016 with an injection to her left knee. AT 1276. In June

15  2016, Plaintiff reported improvement in her left knee. AT 1261. In August 2017, Plaintiff's

16  physical therapist reported that Plaintiff was making objective gains in range of motion

17  and strength with relative reduction in pain reports in her left knee. AT 1307. In February

18  2018, Plaintiff reported that a knee brace helped with her left knee pain. AT 1233.

19       Evidence of conservative treatment is a clear and convincing reason for the ALJ

20  to discount Plaintiff's subjective symptom testimony. *See Parra*, 481 F.3d at 750-51; *see*

21  *also Warre v. Comm'r of Soc. Sec. Admin*, 439 F.3d 1001, 1006 (9th Cir. 2006) (finding

22  impairments that can be effectively controlled with medication are not disabling).

23  Therefore, the ALJ properly relied on evidence of treatment to discount Plaintiff's

24  subjective symptom testimony.

25       The ALJ also cited Plaintiff's activities of daily living as a reason for discounting

26  the more severe aspects of her testimony. AT 2705. The ALJ noted that Plaintiff reported

27  being able to prepare simple meals, clean one or two times per month, do laundry, drive,

28  and grocery shop. AT 333-34; *see* AT 1027 (reporting that Plaintiff goes to her job, goes

1    to the store as needed, can drive 30 to 40 minutes before experiencing pain, watches

2    television), 2663. Defendant also argues that Plaintiff could work as a food demonstrator

3    for varying hours and days per week during the period at issue. Def. MSJ at 10 (citing AT

4    50, 62, 1026, 2666, 2697, 2967). Contradictions between Plaintiff's symptom testimony

5    and her actual activities of daily living is a permissible reason to discount Plaintiff's

6    severely limiting symptom statements. *See Burch*, 400 F.3d at 680-81 (finding symptom

7    statements contradicted by the plaintiff's ability to care for her personal needs, cook,

8    clean and shop, interact with family and boyfriend, and noting that though these daily

9    activities "may also admit of an interpretation more favorable to [the plaintiff], the ALJ's

10   interpretation was rational" and must be upheld where susceptible to more than one

11   rational interpretation).

12         Finally, the ALJ did not wholly discount Plaintiff's symptom statements. The ALJ

13   did not deem Plaintiff able to perform any job in the national economy. Instead, the ALJ

14   found that Plaintiff was limited to light work, with many additional physical limitations

15   included in her residual functional capacity. AT 2701. Under the regulations, Plaintiff's

16   statements of subjective symptoms alone are insufficient grounds to establish disability.

17   20 C.F.R §§ 404.1529(a), 416.929(a). The Court finds the ALJ provided sufficiently

18   specific reasons for discounting the more severe aspects of Plaintiff's symptom

19   testimony regarding her physical impairments, such that the Court does not find

20   Plaintiff's testimony was arbitrarily discredited. *See Brown-Hunter*, 806 F.3d at 493.

21   **V.    CONCLUSION**

22         With error established, the court has the discretion to remand or reverse and

23   award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be

24   remanded under the "credit-as-true" rule for an award of benefits where:

25         (1) the record has been fully developed and further administrative
26         proceedings would serve no useful purpose; (2) the ALJ has failed to
           provide legally sufficient reasons for rejecting evidence, whether claimant
           testimony or medical opinion; and (3) if the improperly discredited evidence
27         were credited as true, the ALJ would be required to find the claimant
           disabled on remand.
28

1   *Garrison*, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are

2   met, the court retains "flexibility to remand for further proceedings when the record as a

3   whole creates serious doubt as to whether the claimant is, in fact, disabled within the

4   meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d

5   403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative

6   proceedings would serve no useful purpose, it may not remand with a direction to

7   provide benefits."); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th

8   Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and

9   ambiguous, the proper approach is to remand the case to the agency.").

10          Here, the record as a whole creates serious doubt as to whether Plaintiff was, in

11  fact, disabled during the relevant period. On remand, the ALJ is free to develop the

12  record as needed, but <u>must</u> address the opinion of treating source Dr. Xue. The Court

13  expresses no opinion regarding how the evidence should ultimately be weighed, and any

14  ambiguities or inconsistencies resolved, on remand. The Court also does not instruct the

15  ALJ to credit any particular opinion or testimony. The ALJ may ultimately find Plaintiff

16  disabled during the entirety of the relevant period; may find Plaintiff eligible for some type

17  of closed period of disability benefits; or may find that Plaintiff was never disabled during

18  the relevant period, provided that the ALJ's determination complies with applicable legal

19  standards and is supported by the record as a whole.

20                                    **<u>ORDER</u>**

21          Accordingly, the Court ORDERS:

22  1.      Plaintiff's motion for summary judgment (ECF No. 13) is GRANTED;

23  2.      The Commissioner's cross-motion (ECF No. 17) is DENIED;

24  3.      The Clerk of the Court shall enter judgment for Plaintiff; and

25  4.      This matter is remanded for further administrative proceedings consistent with

26          this order.

27  Dated:  August 12, 2025

            CHI SOO KIM
            UNITED STATES MAGISTRATE JUDGE

28  5, howe.2091

                                      22